ELECTRONIC CITATION:  2005 FED App. 0005P (6th Cir.)
File Name:  05b0005p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: GASEL TRANSPORTATION LINES, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| VOLVO COMMERCIAL FINANCE LLC THE AMERICAS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. 04-8062 |
| | ) | |
| GASEL TRANSPORTATION LINES, INC., | ) | |
| | ) | |
| Appellee. | ) | |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Eastern Division, at Columbus
Chapter 11 Case No. 03-57447

Argued:  February 2, 2005

Decided and Filed:  June 9, 2005

Before: COOPER, GREGG, and WHIPPLE, Bankruptcy Appellate Panel Judges.

————————————

## COUNSEL

**ARGUED:** Richard Boydston, GREENEBAUM DOLL & McDONALD PLLC, Cincinnati, Ohio, for Appellant.  Grady L. Pettigrew, Jr., COX, STEIN & PETTIGREW CO., L.P.A., Columbus, Ohio, for Appellee.  **ON BRIEF:**  Richard Boydston, GREENEBAUM DOLL & McDONALD PLLC, Cincinnati, Ohio, for Appellant. Grady L. Pettigrew, Jr., COX, STEIN & PETTIGREW CO., L.P.A., Columbus, Ohio, for Appellee.

---

**OPINION**

---

MARY ANN WHIPPLE, Bankruptcy Appellate Panel Judge.  The appellant appeals an order denying its application for allowance of an administrative expense claim.  For the reasons that follow, we conclude that the order on appeal should be **AFFIRMED**.

## I.  ISSUES ON APPEAL

The issue presented is whether the bankruptcy court erred in determining that the appellant is not entitled to allowance of an administrative expense claim as a result of the debtor in possession's postpetition use of trucks in which the appellant holds security interests.

## II.  JURISDICTION AND STANDARD OF REVIEW

An order determining that a claim is not entitled to administrative expense priority constitutes a final order, *Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.)*, 309 B.R. 277, 281 (B.A.P. 6th Cir. 2004) (citing *United States v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 116 F.3d 1391, 1393-94 (11th Cir. 1997); *Beneke Co. v. Economy Lodging Sys., Inc. (In re Economy Lodging Sys., Inc.)*, 234 B.R. 691 (B.A.P. 6th Cir. 1999)), so the order being challenged may be appealed as of right.  28 U.S.C. § 158(a)(1).  The United States District Court for the Southern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel, and neither party has timely elected to have this appeal heard by the district court.  28 U.S.C. §§ 158(b)(6), (c)(1).  Accordingly, the Panel has jurisdiction to decide this appeal.

"The Panel reviews the bankruptcy court's denial of administrative expense priority status for an abuse of discretion."  *Pittsburgh-Canfield Corp.*, 309 B.R. at 281 (citing *Economy Lodging Sys., Inc.*, 234 B.R. at 691; *Gull Indus., Inc. v. John Mitchell, Inc. (In re Hanna)*, 168 B.R. 386 (B.A.P. 9th Cir. 1994)).  "An abuse of discretion occurs only when the [trial] court relies upon

clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Schmidt v. Boggs (In re Boggs)*, 246 B.R. 265, 267 (B.A.P. 6th Cir. 2000). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Mathews (In re Mathews)*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)). "An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.' The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Mayor of Baltimore, Md. v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002) (citations omitted).

## III. FACTS

On January 12, 2001, Volvo Commercial Finance LLC The Americas ("Volvo") financed the purchase by Gasel Transportation Lines, Inc. (the "Debtor"), of eleven 2001 tractors (the "Tractors"). On May 19, 2003, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). The Debtor, as debtor in possession, continued to use the Tractors postpetition.

On June 2, 2003, Volvo filed a motion for relief from the automatic stay imposed by § 362 of the Bankruptcy Code so that it could exercise its remedies against the Tractors. On June 10, 2003, Volvo filed a motion for abandonment of the Tractors. After a hearing on August 12, 2003, the bankruptcy court entered an order on September 9, 2003, adopting Volvo's assessment of the current values and the rate of depreciation of the Tractors and directing the Debtor to make "a more significant offer of adequate protection" than it had previously proposed. The order provided that, if the Debtor failed to make such an offer within ten days, the court would modify the automatic stay as requested by Volvo. Finding that the Debtor had made no such offer, on September 25, 2003, the bankruptcy court entered an order granting Volvo's motion for relief from the stay.

3

On October 2, 2003, the Debtor filed a motion for reconsideration. On October 16, 2003, the bankruptcy court entered an Agreed Order on Motions for Relief from Stay and Abandonment by Volvo Commercial Finance LLC The Americas (the "Agreed Order"), which required the Debtor to make certain "adequate protection" payments commencing on October 15, 2003. The parties agree that those payments cover only the time period from September 2003 forward. On October 27, 2003, the Debtor withdrew its motion for reconsideration of the order granting Volvo relief from the automatic stay.

On December 31, 2003, Volvo filed an Application for Allowance of Administrative Expense Claim, seeking the allowance of an administrative expense for the Debtor's use of the Tractors during the period between the commencement of the case and the onset of the adequate protection payments pursuant to the Agreed Order (the "Initial Period").[1] At the conclusion of the hearing on the application, conducted on June 24, 2004, the bankruptcy judge issued an oral bench opinion denying the application. The court reasoned:

> Generally what's required is there has to be proof of a post-petition trans-action with the estate and there also has to be proof that there has been direct and substantial benefit to the estate or the debtor in possession.

---

[1] At the outset of its application, Volvo expressly requested allowance of an administrative claim under § 503(b)(1)(A) "on the grounds that said sum represents the actual, necessary costs and expenses of preserving the estate of the debtor . . . for use of [the Tractors]" during the Initial Period. Paragraphs 14 and 15 are more specific regarding the benefit to the estate, and Paragraph 16 in essence alleged the monetary value of the benefit, asserting that "[t]he agreed upon cost and expense between the Debtor and Volvo Commercial Finance for the use of the Tractors pursuant to the Contract is $19,417.49 per month." In Paragraphs 11 and 12 of the application, Volvo contended that "[t]he [October 2003] Agreed Order addresses only adequate protection payments from on and after September 1, 2003," and "does not resolve claims by Volvo Commercial Finance for use of the Tractors during the Initial Period." Volvo thus distinguished its request for administrative expense priority from a request for adequate protection, as it also did in Paragraph 17 of the application. In Paragraph 18, Volvo offered a calculation of its claim, which it expressly denominated as an "alternative" calculation. Volvo's "alternative" calculation of its claim is more consistent with a determination of adequate protection, focusing on the reduction in value of the Tractors due to use, than with a determination of the amount of an administrative expense, focusing on the benefit to the estate of the use. The fact that Volvo erroneously offered an adequate protection-type calculation as an alternative to the calculation stated in Paragraph 16 did not convert the application for allowance of an administrative expense claim into a request for adequate protection.

4

It's no doubt to me that having the trucks is a substantial benefit to the debtor. But where I'm lost here and where I'm not satisfied, Mr. Boydston, from what you're telling me here today is I don't see a post-petition transaction here with the debtor. I instead see a pre-petition contractual relationship where the debtor had agreed to pay so much per month for the use of the trucks. That agreement occurred pre-petition. Once the case was filed, then it becomes a matter, in my mind, of making appropriate adequate protection arrangements, which was done here. And whether debtor defaults on that I think that's a matter for another day. But I don't think I'm entitled to give your client an administrative expense priority because in my view the whole transaction is pre-petition, there is no separate post-petition transaction in this case. I don't believe I'm entitled to or authorized to grant an administrative expense claim under 503(b)1(A).

(Tr. at 34-35, Am. App. of Appellant, at 312-13.) The bankruptcy court entered an order denying Volvo's application on July 21, 2004. Volvo timely filed a notice of appeal on July 23, 2004.

## IV. DISCUSSION

Section 503(a) of the Bankruptcy Code authorizes entities to file requests for payment of administrative expenses. Section 503(b) provides, in pertinent part: "After notice and a hearing, there shall be allowed administrative expenses, . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The Sixth Circuit has adopted a two-step analysis in applying these provisions:

> [A] debt qualifies as an "actual, necessary" administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially bene-fitted the estate. The benefit to the estate test limits administrative claims to those where the consideration for the claim was received during the post-petition period.

*PBGC v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir. 1997) (citing *Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir. 1987)). In determining whether there was a "transaction with the bankruptcy estate," "the proper focus [is] on the inducement involved in causing the creditor to part with its goods or services." *United Trucking Serv., Inc. v. Trailer Rental Co. (In re United Trucking Serv., Inc.)*, 851 F.2d 159, 162 (6th Cir. 1988). As the Sixth Circuit explained in *White Motor*:

5

A creditor provides consideration to the bankrupt estate only when the debtor-in-possession induces the creditor's performance and performance is then rendered to the estate. If the inducement came from a pre-petition debtor, then consideration was given to that entity rather than to the debtor-in-possession. However, if the inducement came from the debtor-in-possession, then the claims of the creditor are given priority.

*White Motor Corp.*, 831 F.2d at 110 (6th Cir.1987) (footnote omitted). Normally, merely continuing to possess equipment pursuant to a prepetition contract does not constitute "inducement" by the debtor in possession. *United Trucking Serv.*, 851 F.2d at 162.

Volvo was granted relief from the automatic stay on September 24, 2003. It was then permitted to exercise any and all of its remedies available under state law and its security agreement free of the automatic stay and the Debtor's bankruptcy case. Under the Agreed Order entered on October 15, 2003, the parties agreed upon and the bankruptcy court accepted terms upon which the Debtor would be permitted to continue to use Volvo's non-cash collateral notwithstanding the granting of relief from the automatic stay. The Agreed Order did not, however, vacate the bankruptcy court's order granting relief from the automatic stay. Arguably, Volvo's willingness to allow the Debtor to use its non-cash collateral on specified terms – after the stay was terminated – constituted a new, postpetition transaction with the estate. The Panel cannot find and Volvo has not identified any other action in the record prior to the Agreed Order that even arguably amounts to an inducement by the postpetition debtor in possession to cause Volvo to part with its collateral as the Sixth Circuit required in *White Motor* and *United Trucking Service* before the creditor is entitled to administrative expense priority. The problem for Volvo is that the Agreed Order, and its arguable inducement for Volvo to do new business with the Debtor's estate, occurred *after* the time period for which it sought an administrative expense claim. The debtor in possession was able to retain and use Volvo's collateral during the first fifteen weeks of the chapter 11 case solely by virtue of the automatic stay. Accordingly, the bankruptcy judge correctly denied Volvo's application for an administrative expense claim because there was no postpetition transaction with the bankruptcy estate that induced Volvo to allow the Debtor to retain the collateral during the period for which it sought such a claim.

6

## V.  CONCLUSION

For the foregoing reasons, the bankruptcy court's order denying Volvo's Application for Allowance of Administrative Expense Claim is hereby **AFFIRMED**.

JAMES D. GREGG, Bankruptcy Appellate Panel Judge, Concurring.  I write separately because the majority opinion misapprehends the issue and engages in an overly restrictive analysis given the record on appeal.  Simply stated, the majority analyzes a personal property lease transaction when we actually face a secured transaction.  For the reasons that follow, I would AFFIRM the bankruptcy court's decision on different grounds.

## I.  ISSUE ON APPEAL

Is the secured creditor, Volvo Commercial Finance LLC The Americas ("Volvo"), entitled to an administrative expense claim for depreciation of its collateral during the time period before the entry of an agreed adequate protection order, when that order limited adequate protection to periodic prospective payments?

## II.  FACTS

The majority opinion short shrifts important and necessary facts.  I have augmented the facts based upon the record on appeal.

The Debtor, Gasel Transportation Lines, Inc., filed a petition under chapter 11 of the Bankruptcy Code on May 19, 2003.[1]  After the filing of its bankruptcy petition, the Debtor operated its trucking business as a debtor-in-possession under § 1108.[2]

On January 12, 2001, Volvo financed the Debtor's purchase of eleven 2001 tractors under a Master Loan and Security Agreement (the "Loan Agreement").[3]  Volvo holds a first lien on each

---

[1] The Bankruptcy Code is contained in 11 U.S.C. §§ 101-1330.  Unless stated to the contrary, some future statutory references to the Bankruptcy Code are cited as "§ ____."

[2] This statement is based upon the record on appeal.  At oral argument, the Panel was advised that the Debtor is no longer in business.

[3] The Loan Agreement was subsequently modified on August 25, 2001, and on July 10, 2002.

of the tractors. As of the filing of the Debtor's chapter 11 petition, the Debtor owed Volvo $940,747 under the Loan Agreement.

Less than one month after the case was commenced, on June 2, 2003, Volvo filed a motion for relief from stay. Volvo also filed a motion for abandonment of the tractors on June 10, 2003. The Debtor objected to both motions. A hearing was held before the bankruptcy court on August 12, 2003.[4] After hearing testimony regarding the proper valuation and the rate of depreciation of the eleven tractors, the court took the matter under advisement. On September 9, 2003, the court issued an order adopting Volvo's valuation and depreciation estimates and directing the Debtor to "come forward with a more significant offer of adequate protection" than it had previously proposed. The order afforded the Debtor ten days within which to make its offer; after expiration of the ten day period, the court stated that the automatic stay would be modified as requested.

Although there is some dispute as to whether the Debtor communicated an offer of additional adequate protection to Volvo during the ten day period,[5] the bankruptcy court entered an order granting Volvo's motion for relief from stay on September 24, 2003. The Debtor filed a motion for reconsideration on October 2, 2003.

Prior to the scheduled hearing on the motion for reconsideration, Volvo and the Debtor entered into an Agreed Order on Motions for Relief from Stay and Abandonment by Volvo Commercial Finance LLC The Americas (the "Agreed Order"). The Agreed Order is dated October 15, 2003 and provides:

---

[4] On June 23, 2003, the bankruptcy court entered an Order Continuing Stay Until Final Hearing with regard to Volvo's motion for relief from stay. As a result, the provisions of § 362(e) are not relevant to this appeal. The final hearing on the relief from stay motion was held on July 7, 2003, then continued to August 12, 2003 with the consent of the parties.

[5] This issue gave rise to the Debtor's subsequent Motion to Reconsider, Alter, or Amend Order Entered September 25, 2003, Granting Motion by Volvo Commercial Finance, LLC the Americas for Relief From Stay.

9

The Debtor shall pay Volvo Commercial Finance $9,000 by October 15, 2003 and $9,000.00 by October 20, 2003 and $9,000.00 by November 12, 2003 and $9,000.00 by the 12th calendar day of each consecutive month thereafter (the "Adequate Protection Payments") until and unless further agreed in writing by both Volvo Commercial Finance and the Debtor or until further order of the court . . . .

The Agreed Order also sets forth terms of default. Notably, the "*Adequate Protection Payments*" required by the order cover only the time period from September 2003 forward.[6] The order does not identify *any* adequate protection payments to be made by the Debtor for the period from the filing date to September 2003 (that time period shall be referred to herein as the "post-filing, pre-order period"). Nor does the order reserve Volvo's right to request adequate protection payments at a later time. The Agreed Order was signed by the bankruptcy judge and entered on the court's docket on October 15, 2003.

Thereafter, on December 31, 2003, Volvo filed an Application for Allowance of Administrative Expense Claim. Volvo's application sends mixed legal requests. First, in the introduction, it requests allowance of an administrative claim under § 503(b)(1)(A) for "actual, necessary costs of preserving the estate of the debtor . . . for use of eleven [tractors] from the commencement of this case on May 19, 2003 until September 1, 2003" (i.e., the post-filing, pre-order period). App. at 266. Second, in paragraphs 11 and 12, Volvo asserts that "*[t]he Agreed Order only addresses prospective adequate protection payments from on and after September 1, 2003 . . . . [and] does not resolve claims by Volvo . . . for use of the tractors during [the post-filing, pre-order period]*." App. at 268 (emphasis added). Third, in paragraph 17, Volvo argues that "[a] secured creditor who seeks and receives adequate protection payments may still be entitled to allowance of an administrative expense claim." App. at 268. In support of this assertion, Volvo cites a reported decision which addresses the propriety of allowing an administrative expense claim under § 507(b) for failure of adequate protection. Volvo confuses the issue by attempting to use a readily distinguishable authority to receive an administrative claim. Lastly, in paragraph 18, Volvo

_____

[6] At a subsequent hearing, counsel for Volvo informed the bankruptcy court that one of the October payments was intended to be applied as adequate protection for September 2003.

10

calculates its asserted approximate $66,000 claim by two alternative methods – "*depreciation on the equipment at $2,000 per unit per month*" and "loss of lease income at the Contract rate" (which smacks of prohibited lost opportunity costs) during the post-filing, pre-order period. App. at 268 (emphasis added). Read in its totality, Volvo's application seeks a priority administrative claim *as additional adequate protection* for the post-filing, pre-order period.

The Debtor objected to the application, and a hearing on the Debtor's objection was held before the bankruptcy court on June 24, 2004. At the conclusion of the hearing, the bankruptcy judge issued an oral bench opinion denying Volvo's application for an administrative expense claim.

The bankruptcy court first explained that applications for administrative priority are subject to strict scrutiny by the courts because administrative expenses are contrary to the Bankruptcy Code's general policy of equal distribution. The court further reasoned that:

> Generally what's required is there has to be proof of a post-petition transaction with the estate and there also has to be proof that there has been direct and substantial benefit to the estate or the debtor in possession . . . . [Although the parties here had a prepetition contractual relationship], [o]nce the case was filed, then it becomes a matter . . . of making appropriate adequate protection arrangements, which was done here. And whether the debtor defaults on that I think that's a matter for another day. But I don't think I'm entitled to give [Volvo] an administrative expense priority because in my view the whole transaction is pre-petition, there is no separate post-petition transaction in this case. I don't believe I'm entitled to or authorized to grant an administrative expense claim under 503(b)(1)(A).

In accordance with this analysis, the bankruptcy court entered an order denying Volvo's application for administrative expense claim on July 20, 2004. This timely appeal followed.

## III.  DISCUSSION

### A.

Without question, I agree with the majority opinion's conclusion that the "appellant is not entitled to allowance of an administrative expense claim as a result of the debtor in possession's postpetition use of trucks in which the appellant holds security interests."  However, the majority opinion blindly and exclusively relies upon authorities that discuss leased personal property.  No authorities are discussed involving personal property which is encumbered by a security interest.  In this appeal, Volvo has a security interest and no lease exists.  Therefore, the analysis is necessarily different.

"In lease situations the lessor is the owner of the property and the lessee [debtor-in-possession] must compensate the lessor for the benefit to the estate of using the lessor's property." *First State Bank v. Advisory Info. & Mgmt. Sys., Inc. (In re Advisory Info. & Mgmt. Sys., Inc.)*, 50 B.R. 627, 630 (Bankr. M.D. Tenn. 1985).  As the majority opinion recognizes, the lessor may receive such compensation through allowance of an administrative expense claim under § 503(b)(1)(A) if the lessor establishes that the debt "(1) arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate."  *PBGC v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir. 1997) (citing *Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir. 1987)).

As noted, Volvo is a creditor which holds a security interest in tractors owned by the Debtor.  As such, its rights are fundamentally different from those of a lessor.  Under § 363(c)(1), a debtor-in-possession may use non-cash collateral, such as the eleven tractors at issue in this case, in the ordinary course of its business operations without the permission of the bankruptcy court.[7]  Section

---

[7] Section 363(c)(1) provides:
If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary

12

362 further assists reorganization efforts by automatically staying all collection efforts and foreclosure actions against property of the debtor's estate by creditors such as Volvo. Simply stated, Volvo is "not contributing anything to the estate by sitting back and 'allowing' [the] debtor-in-possession to use collateral which it already owns and has a statutory right to use." *In re Advisory Info. & Mgmt. Sys., Inc.*, 50 B.R. at 630.

However, the continuation of the automatic stay and the debtor-in-possession's right to use non-cash collateral are limited by the secured creditor's entitlement to "adequate protection" of the value of its collateral. *See* 11 U.S.C. §§ 362(d)(1), 363(e). Adequate protection is designed to protect a secured creditor, in this instance Volvo, against any decrease in the value of its collateral which may result from depreciation, destruction, or the debtor's use of the collateral. *See id.* § 361; *Lend Lease v. Briggs Transp. Co. (In re Briggs Transp. Co.)*, 780 F.2d 1339, 1344 (8th Cir. 1985); *In re Raymond*, 99 B.R. 819, 821 (Bankr. S.D. Ohio 1989); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988). Under § 361, adequate protection may be provided to a secured creditor: by "requiring the trustee to make a cash payment or periodic cash payments" to the creditor, by granting the creditor "an additional or replacement lien," or by "granting such other relief, *other than entitling [the creditor] to compensation allowable under section 503(b)(1) . . . as an administrative expense*, as will result in the realization by such [creditor] of the indubitable equivalent of such [creditor's] interest in such property." 11 U.S.C. § 361 (emphasis added).

Importantly, while adequate protection may be required under at least three sections of the Bankruptcy Code, §§ 362, 363 and 364, adequate protection may *not* be awarded solely through the grant of an administrative expense claim under § 503(b)(1)(A). As explained, in pertinent part, by Judge Lundin:

course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.
11 U.S.C. § 363(c)(1).
    In contrast, a debtor-in-possession is prohibited from using cash collateral unless the secured creditor with an interest in the collateral consents or unless the court authorizes its use. 11 U.S.C. § 363(c)(2). Cash collateral is not involved in this appeal.

There is nothing in § 503 remotely suggesting that administrative expense priority was intended as an optional remedy to adequate protection of a secured claimholder's interest in property of the estate.

. . . .

A secured creditor is protected against depreciation of collateral during the reorganization period through various other provisions of the Bankruptcy Code. Under 11 U.S.C. §§ 361 and 362 adequate protection of the creditor's interest may be required through periodic cash payments, replacement liens, or other relief *except* the granting of a § 503(b)(1) administrative expense.

. . . .

[When a secured creditor fails to exercise available adequate protection remedies], it may not [later] advantage itself through [a] back door request for an administrative expense.

*In re Advisory Info. & Mgmt. Sys., Inc.*, 50 B.R. at 629-31 (emphasis in original).[8]

---

[8] Under § 507(b), a creditor who has received adequate protection, either through court order or consent agreement, may subsequently become entitled to a "superpriority" administrative claim if the protection received eventually proves insufficient. *See Grundy Nat'l Bank v. Rife*, 876 F.2d 361, 363-64 (4th Cir. 1989) (Section 507(b) "converts a creditor's claim where there has been a diminution in the value of a creditor's secured collateral by reason of a § 362 stay into an allowable administrative expense claim under § 503(b)."). An administrative claim awarded under § 507(b) "must be predicated upon an affirmative grant of adequate protection to a creditor." *Zions Credit Corp. v. Rebel Rents, Inc. (In re Rebel Rents, Inc.)*, 291 B.R. 520, 534 (Bankr. C.D. Cal. 2003). This fact distinguishes administrative claims awarded under § 507(b) from cases where § 503 is proffered as an alternative to adequate protection. Creditors who are awarded administrative claims under § 507(b) have utilized the statutory procedures for obtaining adequate protection of their interests. *See Bonapfel v. Nalley Motor Trucks (In re Carpet Center Leasing Co.)*, 991 F.2d 682, 687 (11th Cir. 1993), *reh'g denied*, 4 F.3d 940 (11th Cir. 1993)*, cert. denied*, 510 U.S. 1118, 114 S. Ct. 1069 (1994). Rather than "merely sitting back and allowing the [d]ebtor to continue using the [collateral]," these creditors have asserted their "undeniable right to repossession and agreed to forgo repossession only after . . . [the debtor] consented to paying adequate protection." *Id*.

Further, an administrative claim awarded under § 507(b) likely represents an "actual and necessary" cost of preserving the debtor's estate because the debtor presumably sought to retain possession of the collateral by agreeing to make adequate protection payments to the creditor. *Id.* ("*The negotiation for continued possession of the [collateral] in return for adequate protection is a post-petition transaction providing new value to the bankruptcy estate*. [A debtor's] efforts to retain the [collateral] demonstrate that the collateral was beneficial to the estate.") (emphasis added).

In light of these principles, I disagree with the majority opinion's characterization of Volvo's application as simply a request for an administrative expense claim under § 503(b)(1)(A). "For starters, a court is not bound by how a party labels its motion. Obviously, '[t]he relief sought, that to be granted, or within the power of the court to grant, should be determined by substance, not a label.'" *Effjohn Int'l Cruise Holdings, Inc. v. A & L Sales, Inc.*, 346 F.3d 552, 560 (5th Cir. 2003) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc)); *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("'[T]he label attached to a motion does not control its substance.'") (quoting *United States v. Oregon*, 769 F.2d 1410, 1414 n.4 (9th Cir. 1985)).

The labels used in Volvo's application for administrative expense claim convey mixed legal requests. The application purports to be brought "pursuant to section 503(b)(1)(A)" and seeks compensation for the Debtor's "use of the [t]ractors" during the post-filing, pre-order period. Yet the application also refers to deficiencies in the adequate protection received by Volvo under the Agreed Order, stating that "[t]he Agreed Order only addresses prospective adequate protection payments from on and after September 1, 2003 . . . . [and] does not resolve claims by Volvo . . . for use of the tractors during [the post-filing, pre-order period]." Volvo further offers two alternative calculations of the amount of its requested administrative claim. Of these, the only viable alternative calculates Volvo's claim according to the estimated monthly depreciation of the tractors.

Despite these conflicting labels, there is only one logical interpretation of the substance of Volvo's request. *As a secured creditor, the only compensation Volvo is entitled to for the Debtor's postpetition "use" of the tractors is adequate protection against a decrease in the value of the tractors.* Accordingly, by seeking an administrative expense claim to compensate it for

This appeal does not involve failure of adequate protection and a resulting "superpriority" administrative claim under § 507(b). At oral argument, the Panel was informed by counsel that the prospective periodic payments required by the Agreed Order had been made by the Debtor to Volvo. Only in the event that there is a future failure of adequate protection will Volvo become entitled to an administrative claim.

"depreciation" and "use" of the tractors, Volvo is, in substance, requesting additional adequate protection for the post-filing, pre-order period.

B.

A sequential review of the facts, based upon the record on appeal, demonstrates why Volvo is not entitled to additional adequate protection. Shortly after the Debtor's chapter 11 petition was filed, Volvo affirmatively protected the value of its collateral by filing a motion for relief from stay. Volvo's motion was brought pursuant to § 362(d), which provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . , such as by terminating, annulling, modifying, or conditioning such stay –
>
> > (1) *for cause, including the lack of adequate protection* of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d)(1) (emphasis supplied). In accordance with the language of § 362(d)(1), a lien creditor must "request" relief from the stay.[9] *See* Fed. R. Bankr. P. 4001(a); *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 684 (B.A.P. 6th Cir. 1999). Thus, the general rule for adequate protection of non-cash collateral can be simply stated: "if you don't ask for it, you won't get it."[10] *In re Kain*, 86 B.R. at 512. Stated differently, inaction by a secured creditor results in a waiver of adequate protection of non-cash collateral. *See First State Bank v. Advisory Info. & Mgmt. Sys., Inc. (In re Advisory Info. & Mgmt. Sys., Inc.)*, 50 B.R. 627, 630 (Bankr. M.D. Tenn. 1985) (when a creditor delays making its request for adequate protection, "'the cost of such delay [is] to be borne by the creditor'") (quoting *In re Briggs Transp. Co.*, 47 B.R. 6, 8 (Bankr. D. Minn. 1984)).

___

[9] Similarly, a creditor seeking adequate protection of its interest in non-cash collateral under § 363(e) is required to request such protection. 11 U.S.C. § 363(e); *see In re Sharon*, 234 B.R. at 684 (adequate protection interrupts a debtor-in-possession's use of non-cash collateral "only after a lien creditor acts as required by § 363(e)").

[10] Indeed, counsel for both parties agreed with this statement during oral argument.

However, the fact that Volvo "asked" for adequate protection through its motion for relief from stay does not automatically entitle Volvo to adequate protection. Faced with Volvo's motion, the bankruptcy court had two major options: either grant the motion and modify the automatic stay or deny the motion and require the Debtor to adequately protect Volvo's non-cash collateral. Although secured creditors have the right and ability to obtain adequate protection from the commencement of the debtor's bankruptcy case, their entitlement to receive adequate protection payments does not ripen until such payments are ordered by the bankruptcy court. *See generally Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C.*, 741 F.2d 41, 44 (4th Cir. 1984) ("Basic to the operation of the judicial system is the principle that a court speaks through its judgments and orders."); *Goldman v. Comm'r*, 388 F.2d 476, 478 (6th Cir. 1967) ("a court speaks only through its orders"); *In re Markey*, 144 B.R. 738, 745 (Bankr. W.D. Mich. 1992) (same).

In this case, the bankruptcy court originally granted Volvo's motion for relief from stay. The Debtor then moved for reconsideration of the court's order. Prior to the hearing on the Debtor's motion, the court entered the Agreed Order which permitted the Debtor to continue to use the vehicles conditioned upon express adequate protection payments and the other terms set forth in the order. Specifically, under the Agreed Order the Debtor was obligated to make two adequate protection payments of $9,000 to Volvo during October 2003 and one $9,000 payment per month thereafter. The Agreed Order was not appealed and was a final order with respect to issues of (1) relief from stay, (2) terms of use of the property, and (3) the adequate protection to be given to the creditor, including the default provisions.[11]

Volvo's subsequent application for an administrative expense claim sought additional adequate protection, of approximately $66,000, for the period between the filing of the Debtor's chapter 11 case and commencement of adequate protection payments under the Agreed Order. However, the res judicata effect of the Agreed Order precludes award of additional adequate protection to Volvo. At oral argument, counsel for Volvo attempted to downplay the importance

---

[11] It is noteworthy that the Agreed Order failed to reserve any right to seek adequate protection for the post-filing, pre-order period.

of the Agreed Order by arguing that, because the bankruptcy court had granted relief from stay prior to entry of the Agreed Order, the Agreed Order did not resolve the adequate protection issues raised in Volvo's motion for relief from stay. Volvo's attorney also blithely asserted that the periodic payments contemplated by the Agreed Order were not intended as adequate protection.

I reject Volvo's revisionist notions of the Agreed Order. After the bankruptcy court granted Volvo relief from stay, the Debtor filed a motion for reconsideration. The Agreed Order was entered prior to a scheduled hearing on the Debtor's motion. The payments required under the Agreed Order were specifically stated to be "Adequate Protection" payments. The Agreed Order was not appealed and represents a final, binding determination of Volvo's entitlement to adequate protection payments. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S. Ct. 2424, 2428 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); *see also Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 463 (6th Cir. 1991) ("Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.") (citing *Stoll v. Gottlieb*, 305 U.S. 165, 170-71, 59 S. Ct. 134, 136-37 (1938); *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir.1972)). Volvo should have addressed its additional request for adequate protection in connection with the litigation that resulted in entry of the Agreed Order. Accordingly, Volvo is barred from obtaining adequate protection beyond that provided in the Agreed Order.

To avoid this result, Volvo could have addressed the post-filing, pre-order time period in the Agreed Order. In the alternative, if settlement of the issue proved impossible, Volvo could have litigated the Debtor's motion to reconsider and demanded adequate protection for the earlier time period. Finally, Volvo could have expressly reserved the issue for later determination. *See Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002) ("Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding.") (citing *D & K Props. Crystal Lake v. Mut. Life Ins. Co.*, 112 F.3d 257, 260 (7th Cir. 1997)). Having failed to exercise any

of these options, Volvo is entitled to no greater adequate protection than it obtained for itself in the Agreed Order.

## IV. CONCLUSION

In substance, Volvo's application for administrative expense claim requests additional adequate protection for the post-filing, pre-order period. However, the Agreed Order resolved all issues relating to adequate protection. The Agreed Order did not provide for adequate protection payments for the post-filing, pre-order period, and it follows that Volvo is not entitled to additional adequate protection payments for this period. Accordingly, I would AFFIRM the bankruptcy court's decision on different grounds than those stated by the majority opinion.